# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 6321 | **DATE** | 3/8/2000 |
| **CASE TITLE** | Paul Eichwedel vs. Gabriel Rodriguez, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss (Doc. No. 52-1) is granted in part and denied in part. Telephone status conference set for 3/23/00 at 11:00 a.m., to be initiated by Defendants' counsel.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 09 2000 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| ETV | courtroom deputy's initials | | 3/8/2000 date mailed notice | |
| | | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAUL EICHWEDEL                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        No. 96 C 6321
                                        )
                                        )        Judge Rebecca R. Pallmeyer
GABRIEL RODRIGUEZ, et al.               )
                                        )
                    Defendants.         )

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Eichwedel, an inmate currently housed at the Dixon Correctional Center, but previously housed at the Stateville Correctional Center ("Stateville") filed this three-count 42 U.S.C. § 1983 suit against officers and officials of Stateville, alleging various violations of his constitutional rights. In a written opinion and order ("April 1997 order"), Judge Zagel, to whom this matter was previously assigned, dismissed many of Plaintiff's claims as part of his initial review of the case under 28 U.S.C. § 1915A. *See Eichwedel v. Rodriguez*, No. 96 C 6321, 1997 WL 2222934 (N.D. Ill. Apr. 30, 1997). The court dismissed nine of the nineteen Defendants[1] and all claims except for the excessive force, conditions of confinement, and equal protection claims in Count II, and the failure to protect claim contained in Count III. On June 19, 1997, the court reinstated Plaintiff's previously

---

[1] The April 1997 order dismissed the following Defendants: Glen Matlock, Melvin Allen, Larry Washington, Artis Johnson, Jr., Philip L. Tinsley, Michael F. O'Leary, Tom Schonauer, Georgia Schonauer, and Diane Jockish.

dismissed disciplinary due process claim contained in Count II.

On March 15, 1999, Defendants filed a motion to dismiss these five remaining claims. Eichwedel has responded. For the reasons stated herein, the court grants Defendants' renewed motion to dismiss with respect to the conditions of confinement claim. With respect to all other claims, Defendants' renewed motion to dismiss is denied.

## PROCEDURAL BACKGROUND

This case has taken many twists and turns since its filing on September 27, 1996. On April 30, 1997, this court limited the original complaint to the following issues and dismissed all others: excessive force, conditions of confinement, equal protection (Count II) and failure to protect (Count III), and further, allowed Plaintiff to proceed *in forma pauperis*. In his April 1997 order, Judge Zagel ruled, as a matter of law, that "any claim accruing before September 20, 1994 must be dismissed" as time barred pursuant to Illinois' two year statute of limitations for personal injury claims. (1997 WL 2222934, * 1) (citing 735 ILCS 5/13-202.) Thus the court dismissed over twelve pages of allegations relating to incidents which took place prior to September 20, 1994. (*Id.* *1, n.1.)

Plaintiff Eichwedel sought reconsideration. On June 19, 1997, Judge Zagel denied Plaintiff's motion to reconsider the dismissal of Counts I and certain claims in Count III, but reinstated the Count II due process claim relating to Eichwedel's placement in disciplinary segregation. The court reinstated the claim because it found the newly presented fact that Plaintiff was a pretrial detainee, at the time of his placement in segregation, arguably gave rise to a liberty interest. (Judge Zagel's June 19, 1997, Minute Order, Docket #23.)

On July 25, 1997, the court granted Eichwedel leave to file an amended complaint. Also on July 25, 1997, Defendants filed their first motion to dismiss, based on the original complaint. On July 29, 1997, they filed their answer. On September 4, 1997, the court granted Defendants' motion to strike plaintiff's amended complaint. Then on November 6, 1997, the court vacated its September 4 order, denied Defendants' motion to dismiss as moot and granted Plaintiff leave to file yet another amended complaint. That same day Plaintiff filed his amended complaint.[2] On October 26, 1998, the case was reassigned from Judge Zagel to this court. On March 15, 1999, Defendants filed a renewed motion to dismiss on behalf of the remaining ten Defendants, namely: Gabriel Rodriguez, Gussie Watson, Salvador Godinez, Mark Nelson, Jerome Springborn, George DeTella, Leora Harry, S. Robinson, D. Johnson, and F. Funches, all other Defendants having been previously dismissed.

### Amended Complaint: Remaining Issues

Although dismissed in Judge Zagel's April 1997 order, Plaintiff, in his amended complaint, reasserts his claim that he was denied access to the law library and telephone privileges. (Amended Complaint ("Amend. Compl.") ¶ 1-40.) As best the court can

---

[2]      The amended complaint is identical to the original complaint except for paragraph 47. Paragraph 47 alleges that on October 6, 1994

> "in retaliation for plaintiff's attempt to assert his constitutionally protected right to access to the courts, Captain Gabriel A. Rodriguez physically attacked and abuses plaintiff and orders several other officers, including - but not limited to - officers Glen Matlock and Larry Washington, to participate in this attack. . . . During the attack, plaintiff is kicked, punched, and jumped upon, and as a result, plaintiff loses partial control of his bowels and kidneys. . . . At no time does plaintiff resist or attempt to fight back.

(Amend. Compl. ¶ 47.)

determine, Plaintiff alleges that this deprivation resulted in his reconviction in a second criminal trial (Amend. Compl. ¶ 21-24, 29), an adverse judgment entered in a related civil suit,[3] and the delay in preparation of this civil rights complaint. (Amend. Compl. ¶ 39.) Judge Zagel dismissed Plaintiff's access to the courts claim, citing *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491 (1977). Judge Zagel wrote:

> The Seventh Circuit, interpreting *Bounds*, has held that "the right of access is satisfied if, in lieu of a law library, adequate assistance of counsel is provided." *United States ex rel. George v. Lane*, 718 F.2d 226, 230 (7th Cir. 1983) (quoting *Lock v. Jenkins*, 641 F.2d 488, 498 (7th. Cir. 1981). Eichwedel's own allegations clearly establish he was represented by counsel during his second criminal trial (Amend. Compl. ¶ 19, 168), and thus he had no right to law library access. *See George*, 718 F.2d at 233 (state not required by law to offer law library access once it has fulfilled its constitutional requirement to provide inmate competent legal counsel)

1997 WL 222934, *2. Eichwedel further complains that a cellhouse moratorium on telephone calls impeded his ability to prepare a "pro se motion to dismiss." (Amend. Compl. ¶ 21.) Judge Zagel dismissed the claim as well, noting that

> Eichwedel does not explain the need for such a "*pro se* motion" when he was admittedly represented by counsel. In any event, while the temporary cancellation of telephone calls may have delayed the preparation of the motion, it did not prevent him from filing it and getting a ruling on the merits. Eichwedel's allegations do not support a finding of prejudice regarding his

---

[3]      Eichwedel alleges that an adverse judgment was entered against him in *Federal Kemper Life Assur. Co. v. Eichwedel*, 266 Ill.App.3d 88, 639 N.E.2d 246 (1st Dist. 1994). (Amend. Compl. ¶ 13.) In *Kemper*, the insurer of Mr. Eichwedel's murder victim won a declaration that the life insurance policy, also purchased by Plaintiff Eichwedel, was void from its inception. Eichwedel has not explained how he was prejudiced in defending this action by denial of law library and telephone privileges. In any event, Judge Zagel concluded that Eichwedel's claim relating to this civil suit claim was time-barred, 1997 WL 222934, *2, a conclusion that Eichwedel has not effectively challenged.

4

criminal re-trial and do not state a claim for denial of access to the courts.

*Id.* Inasmuch as Count I of the amended complaint contains the exact same allegations as Count I in the original complaint, it remains dismissed for reasons stated in Judge Zagel's April 1997 order.

After his initial review, Judge Zagel permitted four claims to continue: (1) excessive force; (2) conditions of confinement; (3) denial of visitation based on the Equal Protection Clause[4] (all found in Count II); and (4) failure to protect (found in Count III). Additionally, although initially dismissed, Plaintiff's due process claim relating to his placement in disciplinary segregation was later reinstated. These five claims are the subject of Defendants' renewed motion to dismiss.

## DISCUSSION

*Standard of Review*

When deciding a motion to dismiss, this court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and in the light most favorable to the plaintiff. *See McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Wilson v. Formigioni*, 42 F.3d 1060, 1062 (7th Cir. 1994). Dismissal is properly granted "'if it is clear

---

[4]    Judge Zagel allowed the denial of visitation claim to proceed as an equal protection claim, but dismissed Eichwedel's allegation that the denial constituted a violation of his right to due process. Judge Zagel held that an inmate has no due process right under the Fourteenth Amendment to unrestricted visitation. Judge Zagel next determined that Plaintiff also did not possess a state-created liberty interest. Citing *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995), Judge Zagel dismissed the due process claim holding that "the early termination of a single visit certainly does not constitute an atypical or significant hardship and does not implicate a liberty interest." 1997 WL 222934 at *3.

that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir. 1993) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984)). Moreover, when a plaintiff is proceeding *pro se*, courts must construe the pleadings liberally, however inartfully pleaded. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595 (1972). Indeed, it is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (quoting *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987).

When deciding a matter under Federal Rule of Civil Procedure 12(b)(6), a court is not to consider matters outside the pleadings. *Komoroski v. Townline Mini-Mart & Restaurant*, 162 F.3d 962, 963 (7th Cir. 1998). Accordingly, the grievance exhibits that Plaintiff attached to his response, and the affidavits submitted by Defendants, are all excluded from this courts' consideration on motion to dismiss.

*Excessive Force*

Plaintiff alleges that on October 6, 1994,

> in retaliation for Plaintiff's attempt to assert his constitutionally protected right of access to the courts, Captain Gabriel A. Rodriguez physically attack[ed] and abus[ed] plaintiff and order[ed] several other officers. . . including . . . officers Glen Matlock and Larry Washington, to participate in this attack.

(Amend. Compl. ¶ 47). During the alleged attack, Plaintiff claims he was "kicked, punched, and jumped upon." (*Id.*) As a result of the attack, Plaintiff temporarily lost "partial control of his bowels and kidneys," (*id.* ¶ 47), and also "suffered a bruise on his left arm." (*Id.* ¶ 55.)

Defendants do not dispute that they used force to subdue Plaintiff. Rather, Defendants claim their actions were justified because Plaintiff refused to return to his cell after his request for law library access was denied. (Defs.' Renewed Motion, at 4.) Defendants claim that Plaintiff "proceeded to run around the jail searching for a guard who would accede to his request," and thus they were "compelled to use force to subdue the plaintiff and maintain discipline for the safety of the officers and the inmates." (*Id.*)

The Supreme Court has stated clearly that punishments "incompatible with the evolving standards of decency that mark the progress of a maturing society" or "involv[ing] the unnecessary and wanton infliction of pain" are "repugnant to the Eighth Amendment." *See Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992).

> Whenever prison officials stand accused of using excessive physical force constituting "the unnecessary and wanton infliction of pain" violative of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley v. Albers,* 475 U.S. 312, 320-321, 106 S.Ct. 1078, 1084-1085, 89 L.Ed.2d 251: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Extending *Whitley's* application of the "unnecessary and wanton infliction of pain" standard to all allegations of force, whether the prison disturbance is a riot or a lesser disruption, works no innovation.

*Id.* In *McMillian,* the court held that the prisoners' excessive force claim survived a motion to dismiss where he alleged he suffered bruises, swelling, loosened teeth, and cracked dental plate as a result of a prison guard attack. *Id.* Similarly, in the case at bar, Eichwedel has sufficiently stated a claim for excessive force as it related to the October 6, 1994 incident when considering the allegations of the group assault he endured and the injuries he suffered at the direction of Correctional Officer Rodriguez. Whether the force used to subdue

*Eichwedel* was applied in a good faith effort to maintain discipline or maliciously is an issue for summary judgment or trial, not one that provides a basis for dismissal on a 12(b)(6) motion.

Defendants argue in the alternative that even if Eichwedel has adequately alleged that they used excessive force, "Defendants would nevertheless be entitled to qualified immunity." (Defs.' Renewed Motion to Dismiss, at 4.) Prison officials are entitled to qualified immunity from suits for damages brought under § 1983 "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *see also Marshal v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993). The first step in analyzing a qualified immunity defense is to ask whether "the alleged conduct set out a constitutional violation." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). As noted, for purposes of this motion, Eichwedel has presented sufficient allegations to demonstrate that his Eighth Amendment rights were violated. The second step in the analysis of qualified immunity is to ask whether "the constitutional standards [were] clearly established at the time in question." *Id.* The incident at issue occurred in 1994. Case law prior to 1994 was sufficient to put the Defendants on notice that their actions were unlawful. *See Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078 (1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992). The court concludes that Defendants cannot avail themselves of the qualified immunity defense on a pleading motion. Thus, with respect to Plaintiff's excessive force claim, Defendants' motion to dismiss is denied.

*Disciplinary Due Process Claim*

Plaintiff's disciplinary due process claim concerns his placement, on October 6, 1994, in disciplinary segregation after the alleged Rodriguez attack. (Amend. Compl. ¶ 48.) Plaintiff alleges he was sent to disciplinary segregation as a result of a false report Rodriguez drafted which claimed that it was Plaintiff who assaulted Rodriguez. (*Id.*) Plaintiff further claims that while in segregation, he received an additional report written by Officer Mark Nelson ("Nelson") confirming Rodriguez's alleged false description of the altercation. (*Id.*) Plaintiff asserts that Nelson's report violated prison rules, because Nelson did not witness the incident. (*Id.* ¶¶ 48-49.) Plaintiff was subject to a disciplinary hearing in front of the Adjustment Committee regarding the altercation with Rodriguez. (*Id.* ¶ 52.) The Nelson and Rodriguez reports served as the basis for the charges at the disciplinary hearing. (*Id.* ¶¶ 52, 56.) Eichwedel pleaded not guilty, (*id.* ¶ 56), and on October 27, 1994, he was found not guilty of assault, but guilty of a lesser non-violent offense. (*Id.* ¶ 62.) His punishment was set at six days in segregation, and two months at C Grade. (*Id.*)

Plaintiff alleges that his unlawful placement in disciplinary segregation constitutes a deprivation of his liberty interest. In their motion to dismiss, Defendants summarily conclude that "Plaintiff's complaint shows that he was afforded full process of law," and thus his claim should be dismissed. (Defs'. Renewed Motion to Dismiss, at 3.) Assuming the alleged facts in the complaint as true, the court finds Plaintiff has stated a viable due process claim. Since Rodriguez' alleged false report was used as the basis for Plaintiff's disciplinary hearing, arguably the process afforded to the Plaintiff was not adequate. Moreover, Plaintiff

informs the court that during the period in question he was a pre-trial detainee and thus had a protected liberty interest in being released from segregation. The Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979), held that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 441 U.S. at 535, 99 S.Ct. at 1871-72. To the extent that Plaintiff was awaiting trial in October 1994 at the time he was placed in disciplinary segregation, the court finds that he has stated an arguable process claim.

**Conditions of Confinement:**

On October 12, 1994, Plaintiff alleges that a prominent inmate gang requested Plaintiff move out of cell 1-B-01 "in order [for] one of their members to move in." (Amend. Compl. ¶ 53.) Plaintiff alleges that Captain Lyles, followed this request, ordering Plaintiff to move to cell 3-G-02, also within the segregation unit. (*Id.*) Once Plaintiff moved into this new cell, an inmate objected to his moving because his new cell was also located in a gang wing. (*Id.*) Plaintiff alleges that he was escorted by Officer Howe and the complaining inmate to see Lieutenant Wright "so that the matter could be resolved." (*Id.*) According to Plaintiff, Lieutenant Wright granted the inmate's request to move Plaintiff. (*Id.*)

The following day, Plaintiff was moved to cell 3-F-12, again in the segregation unit. (*Id.* ¶ 54.) Plaintiff alleges the cell's condition was deplorable and uninhabitable. (*Id.*) Specifically, Plaintiff describes the cell as obviously having been "the site of a severe fire (or fires) because the walls were blackened with soot, and similar debris and there [were] marks on the door and wall where flames burned off the paint." (*Id.*) Plaintiff further alleges that

"the bed had a urine soaked mattress and the room was infested with roaches and other insects." (*Id.*) Plaintiff asserts no cleaning materials were provided. (*Id.*)

Three days after he was moved into cell 3-F-12, on October 16, 1994, there was a fire in the area near Plaintiff's cell. (*Id.* ¶ 57.) As a result of the fire, Plaintiff asserts that his "eyes, nose, lungs, etc., burned from the toxic fumes and smoke." (*Id.*) When Officer Howe came to extinguish the blaze, he did not evacuate Plaintiff, but only opened the window. (*Id.*) Plaintiff made repeated requests to Officer Howe to be removed from the area after the fire, but Plaintiff alleges such requests fell on deaf ears. (*Id.*) Plaintiff spent 27 days in segregation, presumably in this same cell. (*Id.* ¶ 69.)

Defendants argue that the conditions of confinement claim should be dismissed because (1) "Plaintiff fails to allege what, if any, injury resulted from the fire that occurred near his cell," and (2) "Plaintiff fails to direct this count toward any of the named defendants." (Defs.' Renewed Motion to Dismiss, at 3.)

While extreme deprivations are required to make out a conditions-of-confinement claim, the prison conditions must, at minimum, comport with "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976). The court assumes for purposes of this decision that Eichwedel's allegations related to an unsanitary, pest-infested cell and a threat of injury from fire in the cellhouse at least minimally state an Eighth Amendment violation.

Plaintiff's failure to direct the conditions of confinement count toward any particular Defendant is, however, grounds for dismissal. *King v. One Unknown Federal Correctional*

*Officer*, 201 F.3d 910 (7th Cir. 2000). While Plaintiff mentions Captain Lyles, Lieutenant Wright and Officer Howe in his allegations about the cell's conditions, he does not name them as Defendants. Citing *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555-56 (7th Cir. 1996) for support, Plaintiff argues that

> [t]he fact that Plaintiff named the warden and assistant warden in the caption of the complaint, and the fact that he named other individuals in the body of the complaint should be sufficient at this stage of the case for a *pro se* litigant.

(Plaintiff's Answer Brief to Certain Defendants' Motion to Dismiss Certain Claims, at 26.)

The court is unpersuaded by Plaintiff's arguments. First, Plaintiff's naming of the warden and assistant warden in the complaint is insufficient to support his conditions claim. "A defendant cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation." *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Plaintiff has not alleged the warden's or assistant warden's complicity in the conditions claim and thus the court rejects this argument.

Secondly, the *Donald* case is of no help to Plaintiff. In *Donald*, a *pro se* plaintiff brought a § 1983 suit against the Cook County Sheriff's Department rather than naming individual jail officers as defendants, *Donald*, 95 F.3d at 551. Later, after the Sheriff's Department filed a motion to dismiss, Donald realized his mistake and tried to amend his complaint to name individual officers as defendants, but because the statute of limitations had already run, the district court refused to allow the amendment. *Id.* at 551-52, 557-58. The Seventh Circuit reversed. As explained in *King*, the *Donald* court concluded that "the trial judge should have permitted Donald to file an amended complaint –*but only because Donald*

*satisfied the mistake requirement of relation back under Rule 15(c)."* *King*, 201 F.3d at 915 (7th Cir. 2000)(emphasis added).

In contrast to Donald, Plaintiff here cannot avail himself of the relation back doctrine because he cannot satisfy the mistake requirement. The Seventh Circuit has "consistently held that Rule 15(c)(3) does not provide for relation back under circumstances, such as here, in which the plaintiff fails to identify the proper party." *King*, 201 F.3d at 914. This instant case does not present a situation where Plaintiff could not determine the specific identity of Defendant. *See Chavis v. Rowe*, 643 F.2d 1281, 1290 n.9 (7th Cir.1981). To the contrary, Plaintiff has positively identified Captain Lyles, Lieutenant Wright, and Officer Howe in connection with his confinement claim, but, for reasons undisclosed to this court, has failed to include them among the 19 individuals he did name as Defendants. It is also pointless for this court to grant the Plaintiff leave to amend his complaint. Plaintiff filed this suit on September 27, 1996, shortly before the running of the statute of limitations. Were Plaintiff to now file an amended complaint naming the proper defendants, such pleading would not relate back to the timely filed original complaint. An amended complaint would, thus, be barred by the statute of limitations.

Accordingly, with respect to Plaintiff's conditions of confinement claim, Defendants' motion to dismiss is granted.

### Termination of a Visit under Equal Protection Clause

Eichwedel complains that Officer Watson's premature termination of his visit on January 21, 1995 was racially motivated, as Officer Watson and other inmates who were

permitted to continue visiting were black, whereas Plaintiff is white. (Amend. Compl. ¶72.) Plaintiff alleges the premature termination constitutes an equal protection violation. In order to state an equal protection claim, Plaintiff must allege purposeful discrimination directed at an identifiable or suspect class. *See Washington v. Davis,* 426 U.S. 229 (1976). Using the liberal standard of notice pleading, coupled with the liberal standard for reviewing pleadings filed by *pro se* litigants, Judge Zagel, in his April 1997 order, allowed this claim to go forward.

In their motion to dismiss, Defendants do not argue the merits of Plaintiff's equal protection claim. Instead, they assert that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") which was enacted April 26, 1996. The pertinent section of the PLRA reads,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For Defendants to prevail on this point they would have to submit evidence not appropriate in a motion to dismiss.[5] Even if they had been able to do so, Defendants' argument falters in that the date of the visitation issue, January 21, 1995, predates the Prison Litigation Reform Act ("PLRA") by more than a year. As Plaintiff correctly points out, he could not have been obligated to exhaust at that time when no such

---

[5]     Attached to Defendant renewed motion to dismiss are affidavit from custodians of records for Stateville which Defendants claim attest "to the lack of any grievances filed by the plaintiff pertaining to this case." (Defs.' Renewed Motion to Dismiss, at 2.) As stated *supra,* pursuant to Federal Rule of Civil Procedure 12(b)(6), the court will not consider matters outside the pleadings.

requirement existed. *Hollimon v. DeTella,* 6 F. Supp.2d 968 (N.D. Ill. 1998). Plaintiff filed

his law suit more than six months after this incident. According to the existing grievance

process in place at that time, if an inmate was unable to resolve the complaint informally, the

inmate could file a written grievance on a grievance form within six months after the

discovery of the incident, occurrence, or problem giving rise to the grievance. 20 Ill.

Adm.Code §§ 504.810-850; *Sanders v. Elyea,* No. 96 C 4559, 1998 WL 67615 *3 (N.D. Ill.

Feb. 10, 1998). At this juncture in the case, there is no evidence that he did so. But in 1995,

such a failure was not fatal to a civil rights action, as there was no exhaustion requirement

prior to the PLRA. Even though Plaintiff may have filed his lawsuit after the effective date

of the PLRA, his time to grieve his complaint on this incident had passed long before its

passage. Defendants have failed to show how the retroactive application of this section of the

PLRA would not be inequitable under these circumstances. Inasmuch as the court finds that

the PLRA's exhaustion does not preclude Plaintiff's claim, and that Plaintiff has sufficiently

alleged an equal protection based on the termination of visitation, Defendants' motion to

dismiss on this claim is denied.

### Failure to Protect

Plaintiff claims that on December 23, 1994, he was sexually assaulted by another

inmate, Victor Walls, while he was in the shower. (Amend. Compl. ¶ 163.) Plaintiff alleges

that Officer Robinson knew Plaintiff was in the shower, and intentionally provided Walls

access to the shower by opening two doors, which Plaintiff claims only Robinson controlled.

(*Id.*) Moreover, to even get to the shower wing, Plaintiff asserts that

> Officer Funches had to open three doors in order to give Walls that degree of freedom of movement. This in and of itself suggests that this was more than an inadvertent mistake.

(*Id.* ¶ 166.) While in the shower, Plaintiff alleges Walls sexually assaulted him. (*Id.* ¶ 164.) After the sexual assault, Plaintiff claims he wiped Walls' semen onto a clean handkerchief and placed it into a wax paper bag. (*Id.*) Plaintiff reported the incident to the officers on duty and they escorted him to the prison's Health Care Unit where he was examined and where he turned over the semen-stained handkerchief. (*Id.*)

Judge Zagel stated in his April 1997 order that Plaintiff's complaint stated a claim for relief for failure to protect. (1997 WL 222934, at * 4) citing *Babcock v. White*, 102 F.3d 267, 273 (7th Cir. 1996) and *Swofford v. Mandrell*,969 F. 2d 547 (7th Cir. 1992)). In their renewed motion to dismiss, Defendants assert that Plaintiff's claim fails because (1) there are "insufficient allegations to meet the applicable standard of deliberate indifference," and (2) there are insufficient allegations of "a causal nexus between the release of the assailant [Walls] into the corridor and the assault of the plaintiff." (Defs.' Renewed Motion to Dismiss at 3.) Defendants make essentially the same arguments now that they made in their original motion to dismiss. The issues raised by Defendants in both of their motions to dismiss address factual questions that will be necessary for Plaintiff to show at the proof stage of this case. Using the standards for motions to dismiss, the liberal reading of pro se pleadings, and the liberal standard of notice pleading, the court denies Defendants' renewed motion to dismiss regarding the failure to protect claim. The court makes no judgment on whether or not plaintiff will be able to prove the necessary facts, but only that at the motion to dismiss stage

16

of a case, taking the well pleaded facts as true, he has jumped this hurdle.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss (Doc. 52-1) is granted in part and denied in part. Plaintiff's conditions of confinement claim is dismissed, as his claim of denial of access to the law library. With respect to all other claims that survived Judge Zagel's initial review, Defendants' motion to dismiss is denied.

ENTER:

Dated: March 8, 2000

REBECCA R. PALLMEYER
United States District Judge